### HUDSPETH v. HUDSPETH.
### No. 5827.

Court of Civil Appeals of Texas. Amarillo.
Nov. 24, 1947.

Rayford L. Ball, of Lubbock, and F. V. Hinson, of Graham, for appellant.

Campbell & Adams, of Lubbock, for appellee.

PITTS, Chief Justice.

This case was before this Court on a former appeal reported in 198 S.W.2d 768 in which Jack Hudspeth was the appellant and Elizabeth Hudspeth was the appellee. In that hearing the issues were presented to the trial court without a jury on an alternative plea for either the annulment of a ceremonial marriage or for a divorce and in either event for the adjudication of property rights. As a result of that hearing the trial court entered a judgment annulling the marriage and decreed certain property to be that of appellee Elizabeth Hudspeth. On that appeal this Court held that it was not shown that Bertie Lee Hudspeth, the former wife of appellant Jack Hudspeth, had not obtained a divorce from him or that their marriage was not annulled; that the second marriage was legally presumed to be valid until rebutted by sufficient evidence to negative the effective operation of every possible means by which a dissolution of the prior marriage could have taken place and that the burden of proof was upon appellee Elizabeth Hudspeth to satisfactorily establish the fact that the first marriage had not been dissolved. We reversed the judgment of the trial court because the said appellee had failed to discharge the burden of proof required of her by law and we further discussed the law governing the property rights in case a divorce should be granted in another hearing.

At a subsequent hearing which began on June 12, 1947, from which this appeal was perfected, a divorce was not granted but an annulment of a ceremonial marriage was decreed as a result of new pleadings filed by appellee and a different statement of facts presented and as a result of jury findings favorable to appellee made in answer to six issues submitted to it by the trial court.

Appellee filed this suit on February 6, 1946, and pleaded in her amended petition filed April 30, 1947, a ceremonial marriage between her and appellant performed on September 18, 1938, and that they lived together until March, 1944, but that such purported marriage was bigamous, null and void because of a former marriage of appellant that had never been dissolved until August, 1946, several months after this suit had been filed; that his former wife was still living and that appellee had no knowledge of appellant's former marriage until about the time she filed this suit. She prayed for annulment of the marriage, for the restoration of her former name, and for title to her separate property. Appellant answered with a general denial except as to certain admissions made and pleaded that he entered into said marriage with appellee in good faith believing his first wife had been divorced from him. He further pleaded that he found it necessary to travel to various parts of the country during his marriage to appellee in order to engage in his profession as a driller or welder and that on various occasions he sent money to appel-

lee, the exact total sum of which was not known to him but that it was in excess of $20,000 and had been commingled with other funds belonging to appellee; that he and appellee owned a community estate, the nature and value of which he was not in position to state but that appellee knew the nature and the value thereof. He pleaded in a cross-action that appellee be denied all the relief prayed for and that he be granted a divorce from her on the grounds of cruel treatment. He further prayed for a court order in any event requiring appellee to account for the money he had sent to her and for all community property and for judgment awarding to him his interest therein.

The material findings of the jury were in effect that appellant had not been divorced from his former wife when he married appellee; that appellant knew or should in good faith have known that his former wife had not procured a divorce from him prior to his marriage to appellee; that appellant did not in good faith believe he had secured a divorce from his former wife when he married appellee; that appellant had no money on deposit in his own name in any bank in Texas or at any place on the west coast of the United States at or just prior to the filing of this suit; that appellee came into possession of individual separate monies belonging to her in her own right during her ceremonial marriage to appellant; that an automobile and the Ritz Theater in Lubbock, Texas, were purchased by appellee with her own separate money; that appellant did not send any money to appellee during their ceremonial marriage; that appellee's separate funds were never so commingled or mixed with any funds in which appellant had an interest until their identity could not be traced. The jury made other findings favorable to appellee's alleged cause of action that are not material to this appeal.

The record is quite voluminous but it reveals chronologically stated that on or about September 28, 1928, appellant under the name of Chester L. Hudspeth was married to Bertie Lee Key; that they were residents of Johnson County, Texas, during their married life and for some time after the separation but they lived together for only about three months; that a son was born to this marriage whose name is Preston Lee Hudspeth; that he is a spastic paralytic victim who cannot talk and is now seventeen years of age; that appellant was before the District Court of Johnson County, Texas, on January 17, 1931, under the name of Chester L. Hudspeth charged with wife and child desertion and the said court found by judgment rendered that he and his then wife had not been divorced, that his wife and child were in need of support, that he was an able-bodied man and he was directed to help support them by paying specific sums fixed by the court at regular intervals fixed by the court. The judgment of the District Court of Johnson County above referred to was admitted in evidence for a limited purpose as will be hereinafter shown. The record further reveals that appellant on January 11, 1934, filed a petition under the name of Chester L. Hudspeth in the District Court of Johnson County, Texas, asking for a divorce from Bertie Lee Hudspeth, who contested the issue of divorce and the suit was dismissed by order of the said court for want of prosecution on May 4, 1937. Bertie Lee testified at the trial of this case without contradiction that she appeared on the last aforesaid date for trial of the divorce suit filed against her by appellant in Johnson County and was the only witness who testified at the hearing although appellant was in the courthouse at the time. The record further shows that on September 16, 1938, a marriage license was issued by the County Clerk of Calhoun County, Texas, for the marriage of appellant under the name of Jack Hudspeth to Mrs. Elizabeth Breco, appellee, and that they were married by a ceremony performed at Houston, Texas, on September 18, 1938; that Bertie Lee Hudspeth had a letter from appellant in 1939 signed "Chester" advising her to go ahead and marry if she wanted to since he had gotten a divorce sometime prior thereto; that on September 16, 1941, W. V. Barbee procured a marriage license in Denton County, Texas, to marry Mrs. Bertie Lee Hudspeth and they were mar-

ried in the said county on the said date and that they now have two children born to this marriage; that on February 9, 1946, upon the application of appellant his Christian name was changed by order of the District Court of Johnson County, Texas, from "Chester L." to "Jack"; that on June 6, 1946, appellant under the name of "C. L. (Jack) Hudspeth" filed in the District Court of Johnson County, Texas, a suit for divorce against "Bertie L. Hudspeth (Barbee) who resides in Tarrant County, Texas" on the grounds of more than three years abandonment, alleging their marriage on September 28, 1928, their separation soon thereafter, the birth of one child to the marriage, namely, Preston Lee Hudspeth, and further alleging that he then ownd "no property real or personal, except wearing apparel, etc."; that soon after filing the said suit appellant and his Johnson County attorney visited Bertie Lee (Hudspeth) Barbee at her home, 901 Drew Street, in Fort Worth, Texas, and inquired if she had a record of a divorce from appellant and when advised she did not have such she was told by appellant and his attorney that she was a bigamist since she was not legally married, that appellant was not divorced from her and that he had never remarried and they asked her to sign a waiver of service in the divorce action filed in Johnson County on June 6, 1946, but she declined to do so; that on June 22, 1946, this case was tried first before the District Court of Lubbock County at which time appellant claimed he owned considerable property other than "wearing apparel"; that on June 24, 1946, citation was issued on appellant's Johnson County divorce suit and the same was served on "Bertie L. Hudspeth (Barbee)" in Tarrant County, Texas, the next day and returned for filing on June 27, 1946, and that on August 26, 1946, a decree was entered in the District Court of Johnson County, Texas, divorcing "C. L. (Jack) Hudspeth" from "Bertie L. Hudspeth (Barbee)".

Appellant predicates his appeal upon seven points of error all of which are directed at the procedure had in the trial court. He does not direct any assignment or point complaining that it was error to find that he had not been divorced from his former wife when he married appellee or that the evidence was insufficient to support the findings of the jury against him on his claim of a good faith marriage or that the evidence was insufficient to support any other jury finding.

■■■ Appellant presents his points as being germane to one or more of thirteen assignments of error presented. In support of his assignments of error he cites one or more of the seventeen paragraphs set out in his motion for a new trial in the trial court. This being a jury case there was no need for filing assignments of error since a motion for a new trial in the trial court constituted the assignments of error. Under the present Rules of Procedure points are an indispensable part of a brief on appeal. Because of some authorities hereinafter cited we call attention to the fact that it has been held that under the present rules "points" are synonymous with "propositions" or serve the purpose and perform the function of "an assignment of error" under the former practice. Wagley v. Fambrough, Tex.Civ.App., 163 S.W.2d 1072, affirmed 140 Tex. 577, 169 S.W.2d 478; Haskell Independent School Dist. v. Ferguson, Tex.Civ.App., 178 S.W.2d 130, and other authorities cited by these cases.

■■■ Appellee charges in effect that some of appellant's points or assignments of error are duplicitous or multifarious and are too general to be considered on appeal but she proceeds to answer and resist each of them. Appellant's first, fourth and fifth points are stated in the following language:

"First Point. The error of the court in placing a greater burden of proof on the appellant than that required by law. (Germane to Assignment of Error No. 1)."

"Fourth Point. The error of the court in submitting the cause on the special issues submitted to the jury. (Germane to Assignment of Error No. IV. 1X. X.)."

"Fifth Point. The error of the court in refusing to submit the Defendant's Special Requested Issues Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14. (Germane to Assignment of Error No. 10.)."

In each of the said points appellant makes a broad general charge that the trial court erred but he does not point out any specific error or make any specific complaint about any one act or ruling of the trial court. Each point shows on its face that it is multifarious and too general to be considered on appeal. Tracing the first point to assignment of error number one we find appellant makes the same complaint there that he made in point number one and cites paragraphs I, II, III in his motion for a new trial in support of his complaint made in point number one and in his assignment of error number one. In these paragraphs in his motion for a new trial we find appellant there complains that the verdict of the jury was contrary to the evidence; that appellant had failed to prove a dissolution of marriage; that the evidence shows he acted in good faith when he married appellee and that there was a community estate existing between him and appellee; that the judgment of the trial court was contrary to law and particularly to the law written by this Court on the former appeal of this case. Nowhere do we find any complaint about the trial court misplacing the burden of proof or about it placing a greater burden of proof upon appellant than was required by law.

In the presentation of his first point in his brief, he presents much evidence bearing on various issues some of which, together with conferences held between counsel and the trial court, transpired in the absence of the jury. Some portions of his complaint there made consist of abstract statements made either by the court or by counsel in conferences in the absence of the jury about which no complaint was made at the time; other portions of his brief bear no relationship whatever to the matters about which he complained and all of it together is duplicitous in that it involves much subject matter and does not advise us of what particular error, if any, he is complaining.

A careful analysis of the fourth point reveals that appellant is complaining about the manner in which the trial court submitted the whole case consisting of twenty-five special issues together with special instructions to the jury. Appellant's fifth point complains because the trial court overruled his fourteen special requested issues covering more than fifteen pages in the transcript inquiring about most every phase of the case and bearing on at least fourteen different issues. Certainly points four and five are more multifarious than point one.

It has long been the policy of this Court to indulge a liberal construction in favor of the sufficiency of a brief and to give effect thereto if we can determine with some degree of certainty what a party is complaining about and a Court of Civil Appeals is vested with discretion in considering points or assignments of error even if they are not presented in strict conformancy to the rules. But such courts are not expected to indulge such liberality as to consider points so multifarious and general as appellant here presents in points one, four, and five.

A point or assignment of error is multifarious when it embraces more than one specific ground of error or when it attempts to attack several distinct and alleged errors or rulings of the trial court. When it fails to point out definitely some alleged specific error or ruling of the court or fails to present some concrete question raised in the case it is too general and too indefinite to be considered provided it does not present fundamental error. Neither of the points one, four, nor five presents fundamental error and they each do attempt to attack several separate alleged errors but they each fail to point out specific rulings of the court or to complain about concrete questions raised in the case. They are therefore multifarious or too general or both and they should not be considered on appeal in any event. However, if they were to be considered, a careful examination of each of them, together with the record in the case, fails to reveal reversible error in any event. In support of our position we cite the following authorities: Butler v. Jenkins Oil Corporation, Tex.Civ.App., 68 S.W.2d 248, affirmed 128 Tex. 356, 97 S. W.2d 466; Sweatt v. Tarrant County, Tex.Civ.App., 108 S.W.2d 700; Kennedy v. McMullen; Tex.Civ.App., 39 S.W.2d

168; Central Power & Light Co. v. Heder, Tex.Civ.App., 133 S.W.2d 795; Traders & General Ins. Co. v. Davis, Tex.Civ. App., 147 S.W.2d 908; Universal Life Ins. Co. v. Wallace, Tex.Civ.App., 149 S.W.2d 662; Hart v. Greis, Tex.Civ.App., 155 S. W.2d 997; Redman v. Cooper, Tex.Civ. App., 160 S.W.2d 318; Bell v. Stephenson, Tex.Civ.App., 187 S.W.2d 153; 3 Tex.Jur. 855, Sec. 597 and page 881, Sec. 614.

■ Appellant complains in his second point about "The error of the court in making various prejudicial remarks about the plaintiff and his cause of action, as well as the expressed biased attitude throughout the trial. (Germane to Assignment of Error No. 2)." Here he refers to his second assignment of error in which he makes the same complaint in almost the same language as that made in his point and refers us to paragraph four of his motion for a new trial where he complains because of "The prejudicial attitude of the court as well as the action of the court in making various and sundry remarks which were directed toward this defendant and his cause of action."

It is our opinion that this point is likewise too general to be considered but, in keeping with the liberal construction given by us to the briefing rules, we will consider this point.

■ This case is hardly more than an ordinary domestic clamor sharply contested on a second trial. The record discloses that appellant was a migratory worker who had lived in various places in the United States and had also lived in Canada, Alaska, the Aleutian Islands, and South America, and that he and appellee had lived together only sixteen months of their married life. The statement of facts contains four volumes. The jury was retired many times in order to settle controversial issues and much testimony was heard in the absence of the jury to determine whether or not such testimony should be admitted before the jury. The trial court as well as counsel talked freely in the absence of the jury. It is admitted that the remarks of the trial court about which appellant here com-

plains were made at various times in the absence of the jury and not within their hearing and that the trial court told counsel that such remarks were harmless since they were not made in the presence of the jury. The record reveals that the trial court pointed out in the absence of the jury the inconsistencies of appellant's acts and claims who pleaded on January 6, 1946, in the District Court of Johnson County that he owned no property other than his wearing apparel but that he came into District Court of Lubbock County some two weeks later at a former trial of this case and claimed he owned much personal property and an interest in a large community estate; that he was making such a claim at this trial and had gotten a commitment from his former wife during her cross-examination as a witness at this trial to the effect that she would sign a release to any claim she may have to any of his earnings or property acquired by him since they were married and as soon as she left the witness stand he procured such a release from her for a consideration of $1 and it was introduced in evidence; that appellant testified in a former trial that it had been more than ten years since he had seen his first wife whereas the record revealed at this hearing and appellant there admitted he and his Johnson County attorney had visited his former wife in Fort Worth early in June, 1946, and tried to persuade her to sign a waiver in a divorce suit he had just filed against her in Johnson County; that he was orally claiming at the trial of this case without producing any record evidence to support his claim that he obtained a divorce from his first wife in Old Mexico in 1935 but that he had said nothing about such in a former trial of this case on June 22, 1946; that appellant had a suit for a divorce from his first wife pending in Johnson County District Court when this case was heard at a former trial but he said nothing about it at the former trial of this case yet it would have had some bearing then on the issue of his good faith marriage. The trial court likewise reminded appellant's counsel in the absence of the jury that they were officers of the court and owed a

duty of fairness to the court and the trial court asked them to help him try the case fairly and impartially.

It has been many times held that a trial court should be impartial and careful about his remarks and actions in the presence of the jury who are the sole judges of the credibility of the witnesses and of the weight to be given to the testimony. Any prejudicial remarks made by the trial judge about either party to the suit in the presence and hearing of the jury trying the case constitutes reversible error. We do not pass on the question of whether or not the remarks made by the trial court about which appellant here complains were proper remarks but it is our opinion that they do not constitute reversible error since they were not made in the presence and hearing of the jury and since appellant has failed to show that any remarks made by the trial court or that the attitude of the trial court influenced the jury in any way. Appellant's point to the contrary is overruled.

 In his third point appellant complains that the trial court erred in refusing to submit his special instruction number one to the jury which instruction is as follows: "You are instructed a second ceremonial marriage is presumed valid unless rebutted by positive and conclusive evidence which negatives effective operation of every possible means by which a prior dissolution of the prior marriage could have taken place."

Appellee was charged with the burden of overcoming the presumption of the regularity of appellant's marriage to her. The presumption of the regularity of such marriage was rebuttable but appellee was not required to establish absolutely and to a moral certainty that appellant's former marriage had not been dissolved or that he did not act in good faith in his marriage to her. The requirements of the law were met if she introduced sufficient evidence, standing alone, to negative such facts. If she did that, the weight of the evidence, considered in connection with any evidence or circumstances to the contrary, was a question for the jury to pass on. Floyd v. Fidelity Union Casualty Co., Tex.Civ.App., 13 S.W.2d 909 (this ques-

tion was expressly affirmed by the Supreme Court in reversing the case for other reasons reported in Tex.Com.App., 24 S.W.2d 363) ; Woods v. Hardware Mut. Casualty Co., Tex.Civ.App., 141 S.W.2d 972.

 Appellee presented the evidence of appellant's first wife, who had not testified at the former trial of this case, together with much record evidence showing to the satisfaction of the jury that there had been no dissolution of the former marriage of appellant at the time he and appellee were married and she likewise presented sufficient evidence to satisfy the jury that appellant did not marry appellee in good faith. Appellant's own testimony and his acts and conduct may have helped the jury determine these issues. Doubtless the inconsistencies of appellant's evidence offered and his conduct before the jury hereinabove referred to helped to discredit his evidence and claims before the jury on these as well as other issues submitted. In view of the evidence heard and the other instructions the trial court gave the jury concerning the issues raised, it was not error for the trial court to refuse to submit the special instructions on the law of presumption about which appellant complains and it was so held in the case of Hammond v. Hammond, 43 Tex.Civ.App. 284, 94 S.W. 1067, which is a very similar case to this one. Appellant's third point is therefore overruled.

 Appellant charges in point six that the trial court erred in admitting in evidence the charge of wife and child desertion filed against him in the District Court of Johnson County, Texas, in 1931. The burden was upon appellee to prove the former marriage of appellant and to prove that his first marriage of date September 28, 1928, had not been dissolved and that appellant did not marry her in good faith. She introduced over the objection of appellant the judgment of the District Court of Johnson County in a wife and child desertion charge which judgment found that appellant was the husband of Mrs. Bertie Lee Hudspeth and had not been divorced from her at that time. At the request of appellant the trial court limited and restricted the pur-

pose of such evidence to the issue of whether or not appellant had been divorced from his first wife and to the issue of appellant's good faith and instructed the jury definitely not to consider such evidence for any other purpose and it is presumed that the jury followed the instructions of the trial court. Appellant's sixth point is therefore overruled.

In his seventh point appellant complains that the trial court erred in refusing to permit the court reporter to make a complete record of the case. In fact a voluminous statement of facts was made and it bears the approval of the trial court. A careful examination of appellant's brief and his complaint here made is to the effect that on several occasions while the trial court and counsel for the parties were discussing some of the controversial issues of the case in the absence of the jury, the court reporter did not record all that was said by the trial court or either of the parties. The statement of facts reflects that at such a time the reporter wrote: "(Argument Pro and Con)" and appellant cites five such instances. The record does not reflect what was said at such times either by the trial court or by counsel; neither does the record reflect any objections made by counsel for either party to such procedure. The record reflects that on one occasion the trial court said "Don't take this" and counsel for appellant said "We would like to have it" but the trial court said further "No, this is not for the record." No objection was made about excluding it and we have no way of knowing what was said but it is admitted and the record supports the admission that whatever was said on any such occasion was not said in the presence or hearing of the jury. The trial judge admits, as reflected by his order overruling appellant's motion for a new trial found in the transcript, that he had said in effect that the question of appellant's bigamous relationships and his perjured testimony would be submitted to a grand jury the following September but he further says that no such statements were made by him in the presence or hearing of the jury. The trial judge does not state when nor where such statements were made by him and the record does not reflect when or where such statements were made and nobody has furnished us such information. We do not pass on whether or not the statements of the trial court about which appellant complains were proper since the record does not reflect what was said or when or where the admitted statements were made. It is presumed that a case has been correctly tried by the trial court until a complaining party has presented error showing the contrary. The burden is upon the complaining party to help preserve the record and to show by the record made during the trial or by bills of exception thereafter presented or in some other manner any errors committed by the trial court in order to afford an appellate court the opportunity to pass on the alleged errors. In the absence of such the appellate court has no way of knowing whether or not an error was committed. In appellant's seventh point he has failed to show reversible error by the trial court and his said point is therefore overruled.

We have carefully examined the record but fail to find any reversible errors. The judgment of the trial court is therefore affirmed.